## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *v.* ) | Case No. 1:21-cr-00225 (DLF) |
| ) | |
| TRENISS JEWELL EVANS III, ) | |
| ) | ***Filed Under Seal*** |
| *Defendant*. ) | |

## DEFENDANT EVANS'S
## FIRST SENTENCING MEMORANDUM

*/s/ **Steven A. Metcalf II, Esq.***

_____
STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
*Attorneys for Treniss Evans*
99 Park Avenue, 6th Floor
New York, NY 10016
*Phone* 646.253.0514
*Fax* 646.219.2012
metcalflawnyc@gmail.com

## <u>TABLE OF CONTENTS</u>

**I.  INTRODUCTION**
………………….…………........................................................ 7

███████████████████
  ████ ████████████
    ███████████████████████████ 9

      ██████████████████████ 11

        █
        ████████████████
        ████████████████████
        ██████████████
          ████████████████████ 

        █
        ███████████████████████
        █████████████████
          ████████████████████

        █
        ███████████████████████
        ██████████████████
          ████████████████ 15

      ██████████████████████
        ██████████   █████████████████

      ██████████████████████████

      █████████████████
        ████████████████████████

      ██████████████████████ 18

**III.  THE SECTION 3553(A) FACTORS SUPPORT IMPOSITION OF A TIME
         SERVED/POST SUPERVISION SENTENCE**
………………………………………………...……………… 19

      **A.  *The History and Characteristics of Mr. Evans.*………………….. 20**

**B.** *The Seriousness of the Offense, Respect for the Law, and Just Punishment for the Offense* …………………………….. 22

**C.** *Adequate Deterrence to Future Criminal Conduct.* …...……………………….…………………….…  23

**IV.** ADDITIONAL FACTORS ABOUT MR. EVANS …………….…………………………………...……………… 26

**A.** *Mr. Evans Performed CPR on a Medical Emergency, Heart Attack Situation When Nobody Else Would* …………………...……… 26

**B.** *Mr. Evans is Exceedingly Contrite and Remorseful For His Conduct* ..……………………………………… 27

**V.** CONCLUSION …………..……………………………...……………... 28

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
UNITED STATES OF AMERICA,     )
        )
     *v.*     )     Case No. 1:21-cr-00225 (DLF)
        )
TRENISS JEWELL EVANS III,     )
        )     ***Filed Under Seal***
     *Defendant*.     )
_____)

## <u>DEFENDANT EVANS'S FIRST SENTENCING MEMORANDUM</u>

Now comes Defendant, TRENISS JEWELL EVANS III, by and through his counsel, Steven A. Metcalf II, respectfully submits this sentencing memorandum for this instant case. For the reasons set forth herein, and the recent prior proceeding before this Honorable Court, Mr. Evans requests that this Memorandum be filed under seal. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

1.    The Final Presentence Investigation Report (hereafter referred to as "PSR") prepared in this matter highlights that Mr. Evans plead to Count 2, Entering and Remaining in a Restricted Building or Grounds pursuant to 18 USC § 1752(a)(1), of a five-count indictment. (*See* ECF Doc. 46 at p. 1).

2.      As such, Mr. Evans is scheduled for sentencing before this Honorable

Court on September 13, 2022, at 1:00 p.m.

3.      The PSR additionally highlights that "Mr. Evans accepted

responsibility[1] for his criminal conduct in the instant offense by accepting the

elements of the count of conviction and concurring with the factual summary as

recited by the government at the time of his guilty plea." (*See* ECF Doc. 46 at p. 7,

¶ 30).

4.      The PSR section entitled "Offense Level Computation" assessed Mr.

Evans at a "base offense level" of four (4)". (*See* ECF Doc. 46 at p. 8, ¶ 32).  Under

the section "Specific Offense Characteristics" a "two-level increase" was applied

because "[t]he trespass occurred at a restricted government facility." (*See* ECF Doc.

46 at p. 8, ¶ 33). Thus, the "Adjusted Offense Level (Subtotal)" is six (6). (*See* ECF

Doc. 46 at p. 8, ¶ 37).  When Acceptance of Responsibility was taken into account,

the "offense level [decreased]. . . by two levels", thereby bring the Total Offense

Level back to four (4). (*See* ECF Doc. 46 at p. 8, ¶ 39-40).

5.      The PSR, in section "Guideline Provisions" even highlighted the

following:

> Based upon a total offense level of 4 and a criminal history
> category of I, the guideline imprisonment range is zero

---

[1] The PSR goes on to state: "Mr. Evans accepts full responsibility for entering the Capitol while unauthorized, being inside the Capitol for approximately 20 minutes, and then voluntarily exiting the Capitol on January 6, 2021." (*See* ECF Doc. 46 at p. 8, ¶ 30).

months to six months. Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly requires such a term. USSG §5C1.1(b).

(*See* ECF Doc. 46 at p. 16, ¶ 76).[2]

6.    At a criminal history category of I,[3] Chief US Probation Officer in his "Sentencing Recommendation", even recommended a sentence of 30 (thirty) days, supervised release for "1 year", and a fine of $2,000.00. (*See* ECF Doc. 47 at p. 1).

7.    ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███

_____

█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████

█████████████████████████████████████████████
███████████████████████████

12. ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ ███████

██████████████████████████████████████████████

██████████████████████████████

███ ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

███ ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████

_____

█ ██████████████████████████████████████████████
████████████████████████████████

█ ██████████████████████████████████████████
███████████

**Exhibit M**).

man who is deeply loved by his family and others, but yet frequently seems to find himself in the middle of strange, dangerous situations.

23.    Evans has even found himself in a position of going so far as to performing CPR on a man, attempting to give him "rescue breaths" as the man "went blue", in the height of the pandemic, while all others stayed back out of fear that they could get COVID. Even the Sheriffs Deputy would not place her mouth on the victim to deliver breaths as Mr. Evans continued to do to prevent brain damage.  (*See* CPR Report: Comal County Sheriff's Office, Incident 8/25/2021 attached as **Exhibit I**).





███   ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

      ██   ████████████████████████████████████
           ███████████████████████████████

███   ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

███   ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

_____

██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████   ██   █████████████████████████████
██████████████████████████████████████████████████
████████████████████████████









51.     For these reasons, as fully elucidated in the Government's motion, Your Honor may disregard the Guidelines, and fashion an appropriate sentence that is sufficient, but not greater than necessary.

### III.  THE SECTION 3553(A) FACTORS SUPPORT IMPOSITION OF A TIME SERVED/POST SUPERVISION SENTENCE.

52.     Section 3553(a) requires a sentencing court to consider additional factors when determining its sentence.  These additional factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range established by the Sentencing Guidelines, any pertinent policy statement from the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims. Consideration of these additional factors supports a non-Guidelines sentence of time served.

53.     As set forth in Mr. Evans' Plea Agreement, the Guidelines estimated by Mr. Evans' prior attorney and the Government were to be as low as a **level 4**. (*See* Plea at p. 3, ¶ 4). This calculation is based on: (1) Base Offense Level (§ 2B2.3(a)): which equals **4 points**, *plus* Restricted building or grounds, (§ 2B2.3(b)(1)(A)(vii)): which equals **2 points**, *minus* **2 points** for acceptance of responsibility, where the total is **4 points**. That is where Mr. Evans falls: a **level 4**; a level where no jail should be sentenced. Simply put, the true level here is a **level 4**. The custody range for  a **level 4** has a statutory provision range of 1 (one) year and guideline provisions of 0

(zero) to 6 (six) months. Because of all the circumstances described herein, we are not unreasonable to request mercy and ask for a time served/supervised release resolution.

A.  *The History and Characteristics of Mr. Evans*

54.     In imposing his sentence, we ask the Court to consider Mr. Evans' age and the humanity in Mr. Evans.  Mr. Evans was born on November 27, 1974, making him 47-years-old at time he stands before this Court.[11]  He reports growing up in a under lower-middle income neighborhood, to a loving, tightknit family. Mr. Evans married his wife, Stephanie Evans, twenty-two (22) years ago, where they share two children, Treniss IV and Stephanie Evans.

55.     This family is dependent on Mr. Evans as the responsible financial participant in their family and as a dutiful husband. Throughout their many years of marriage, Mr. Evans has proudly and honorably remained true to his vows and the two are very much still in love.  After spending 22 years married, Evans and his wife welcomed two of their loving children into the world: Treniss IV (Twenty years old) and Tristen (Fifteen years old). Ever since, Mr. Evans has been a devoted father, provider and mentor to his two children.

---

[11] Recidivism rates decline rapidly with age, where for Mr. Evans, appearing before this Court, with no criminal history, at the age of 47 drastically changes the statistics demonstrate a significant unlikelihood of recidivism.  *See Measuring Recidivism* at 12.

56.     Mr. Evans's brother, John Sharp, describes Mr. Evans as a true leader and strengthening force for their family during difficult times such as during their father's passing and during the Covid-19 pandemic. (*See* John Sharp's Letter attached as **Exhibit N**). Without Mr. Evans around Mr. Sharp would be forced to work full time, instead of pursuing his dream at the University of Florida. Without Mr. Evans, Mr. Sharp fears that Mr. Evans' children will suffer due to not having "a positive role model to emulate". He has personally witnessed his brother walk away from conversations of an extremist nature and has never known his brother to be a "purveyor of political violence". He describes Mr. Evans as someone who is known to help random people, risking his own safety to the point of almost blinding himself. He recalls Mr. Evans stepping in to be volunteer coach to assure there were enough coaches so that all children could continue to play. He is not someone that just talks about being an active member in the community and helping others – he actually does it.

57.     Mr. Evans' mother, Jan Sharp, cannot say enough about her son, who she admires for the caring "helpful spirit" he is. Ms. Sharp fears that in addition to the grief her grandchildren have suffered for the last eighteen months, they will further be traumatized if their father, an active and meaningful participant in their lives, is sent away. As a grandmother, she knows that her grandchildren rely on Mr. Evans and that they "look up to him, depend on him and need him". She describes

her son as someone who "provides" for her and "looks out" for her and cannot imagine her life without him or without him taking care of her. Ms. Sharp, like many others, knows her son to be "the first one there" if someone needs help. (*See* Jan Sharp's Letter attached as **Exhibit O).**

58.     Eric Douglas Clark, a man who Mr. Evans never met but later recognized him from a video of Mr. Evans aired on a show regarding January 6. Mr. Clark thanked Mr. Evans for his statements in the ensuing conversation and in 2021, willingly wrote a letter in support of Mr. Evans. He stated based off Mr. Evans promoting leaving the protest peacefully, "most of the crowd began to disperse". According to Mr. Clark's account, it is sufficient to state that Mr. Evans played a role in diffusing January 6th and may have even saved people and police from further confrontation resulting from the danger that later ensued.  (*See* Eric Douglas Clark's Letter attached as **Exhibit M**).

59.     Despite his arrest and charges, Mr. Evans's family remains supportive and hopeful for a good outcome as Mr. Evans is the primary head of the household, and provides every day moral and mental support.

**B.**   *The Seriousness of the Offense, Respect for the Law, and Just Punishment for the Offense*.

60.     A non-Guidelines sentence at or below time-served is appropriate and sufficient to reflect the seriousness of the offense of which Mr. Evans was convicted and to promote respect for the law and to provide just punishment.  In fact, a sentence

of an overly lengthy incarceration may undercut respect for the law. *Gall v United States*, 552 U.S. 38, 54 (2007) (highlighting "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

**C.** ***Adequate Deterrence to Future Criminal Conduct.***

61.     Imposing a sentence of time served in this case would have little, if any, bearing on deterrence. Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment. *See* ANDREW VON HIRSCH, et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

62.     "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." GARY

KLECK, et al., *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

63.     In addition to the ineffectiveness of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence of others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime.  For one man ought never to be dealt with merely as a means subservient to the purpose of another." IMMANUEL KANT, *The Science of Right*, 195 (W. Hastie trans., 1790).   General deterrence simply is not a good reason for a lengthy prison term.

64.     As highlighted above, Mr. Evans has three primary built-in deterrents which all militate against recidivism or a recurrence of the conduct in this case. The first is the love, support, and nurturing that he receives from his wife. This is the anchor that has kept Mr. Evans steady and righted in these heavy seas. I have spoken with Mr. Evans and his wife together several times. None of us can dispute the power of love, nor should we want to. I have also been able to view the love they have for their two children, which goes to my second point.

65.     The second reason is clearly Mr. Evans 's two children. Mr. Evans is a good father, who plays a vital part parenting, to providing these two young children

with love, guidance, and knowledge. And, when coupled with the affection and love
of his wife, that power is doubled. These two deterrents are immensely strong.

66. ██████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

██  ████████████████████████████████████████

████████████  ████████  ████████████████████████

████████████████████████████████████████████████

████████  ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

_____

██ ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████

██ ████████████████████████████████████████

## IV.   ADDITIONAL FACTORS ABOUT MR. EVANS

### A.  *Mr. Evans Performed CPR on a Medical Emergency, Heart Attack Situation When Nobody Else Would.*

68.    On August 25, 2021, Mr. Evans was boating with a friend when they noticed a capsized jet ski a couple hundred yards from them. They stopped their water activity and went to help the capsized jet ski recover, at which point they realized another jet ski had already taken the operator of the capsized ski to the boat ramp. Mr. Evans was preparing a tow line to bring in the capsized ski when he heard desperate screams for help from the boat ramp. He quickly engaged his engine and headed to the boat ramp, where he could hear the desperate screams louder as he got closer.

69.    In quick measure, Mr. Evans took a shallow dive into the waist deep water as the boat slowed, and swam to the ramp as fast as possible to assist with the apparent emergency. Upon arrival he found a teenage girl with a man who appeared in his late fifties, in apparent cardiac arrest. The man was laying in the supine position on the concrete ramp. The man had a pulse and was breathing at the time of Evans arrival. He instructed the girl to call 911 and relay the medical information that he was sharing with her to the 911 operator. The victim was aspirating fluids and was beginning to turn blue.

70.     Mr. Evans followed his training as a wilderness first responder, CPR Instructor, First Aid Instructor, Licensed Coast Guard Captain.  Working towards saving the man's life, he turned the man on his side and attempted multiple airway sweeps, after determining the airway was clear he noticed the man had stopped breathing.  The man  had blood known as flash pulmonary edema.  As such, Evans began "rescue breaths". The Sherriff arrived on scene after a few minutes, and he and Mr. Evans worked together attempting to save the man, with the sheriff doing chest compressions. Mr. Evans continuing to do "rescue breaths" that nobody including the Sheriffs would do.  The paramedics arrived on scene and worked for another thirty minutes before this individual was sadly pronounced dead at the scene. (*See* CPR Report: Comal County Sheriff's Office, Incident 8/25/2021 attached as **Exhibit I**).

### B.    *Mr. Evans is Exceedingly Contrite and Remorseful for His Conduct*.

70.     Mr. Evans is quite self-reproving, sincerely remorseful, and duly contrite. He is embarrassed of this criminal conduct and the shame he has brought upon himself and his family. He has entered his plea of guilty voluntarily. He has admitted his guilt to this Court and to the Probation Department. By reason of this experience, this conduct will not recur.

## V.  CONCLUSION

Mr. Evans requests compassion and leniency in this matter.  As the U.S.S.G. is now advisory, and the mandatory minimum sentences may be avoided ██████ ████████████████████████████████████████ this Court has great discretion to fashion a sentence which is sufficient, but <u>not</u> greater than necessary, to comply with the purposes of sentencing.   A sentence of time served, and supervised release is more than sufficient to meet the sentencing goals of providing just punishment, adequate deterrence, public protection and rehabilitation opportunity.

Wherefore, Mr. Evans respectfully requests that this Honorable Court impose a sentence of time served, which is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).  Mr. Evans further requests that this Court waive all fines and penalties in this matter.

Respectfully Submitted,

*/s/ Steven Alan Metcalf II*

_____
 STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

*Counsel for Defendant Treniss Jewell Evans III*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 9, 2022, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

.

/s/ *Steven Alan Metcalf II*

_____

STEVEN A. METCALF II, ESQ.

*Counsel for Defendant Treniss Jewell Evans III*