UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-225 (DLF) |
| v. : | |
| : | |
| TRENISS JEWELL EVANS III, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION
TO MOTION FOR EARLY TERMINATION OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Treniss Jewell Evans' Motion for Early Termination of Probation (ECF No. 88). As explained herein, Evans has presented no new information warranting early termination of probation. A reduction of Evans' probation period would upend this Court's carefully crafted sentence and contravene the interest of justice, especially considering the nature and circumstances of Evans' offense and the sentencing disparity that reduction would create relative to other January 6 defendants.

In the days leading up to January 6, 2021, Evans traveled to Washington, D.C. with knowledge that violent groups, including the Proud Boys, would participate in the protest and, indeed, with plans to meet up with members of the Proud Boys while in the District. Then, on January 6, as members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Evans joined the mob of rioters as they breached the security perimeter and unlawfully entered the Capitol Building. Evans entered (and later exited) the Capitol Building by stepping through broken windows. Once inside, Evans turned to face the rioters outside, raised a megaphone, and declared, "Bring 'em in." Evans then walked by a line of U.S.

1

Capitol Police officers who were blocking off a corridor, advanced deeper into the Capitol, and ultimately entered a Congressional conference room, which he believed to be Speaker Nancy Pelosi's.  In that room, Evans had another rioter record a video of him drinking a celebratory shot of whiskey.  Since January 2021, Evans has made statements on social media demonstrating a lack of genuine remorse and has raised money off his participation in the January 6 attack.

For his conduct, in March 2022, Evans pleaded guilty to one count of 18 U.S.C. § 1752(a)(1): Entering and Remaining in a Restricted Building or Grounds.  In November 2022, he was sentenced to 36 months of probation with a condition of 20 days of intermittent confinement, a $5,000 fine, $500 in restitution, and a $25 special assessment.  He now asks this Court to terminate his 36-month term of probation, having served approximately 22 months of that term.  The Court should deny the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

*Treniss Evans's Role in the January 6, 2021 Attack on the Capitol*

In mid-December 2020, Treniss Evans traveled to Washington, D.C. to protest the outcome of the 2020 Presidential election.  On December 12, 2020, while in Washington, D.C., Evans emailed an address associated with a Texas chapter of the Proud Boys, asking to join the action: "I want in and I am in Washington DC staying at the Marriott at Freedom Plaza."  In an email to another individual associated with the Texas Proud Boys, Evans wrote, "I want in, how do we fight commies and liberals?"  That day, and especially the following night, members of the Proud Boys were involved in multiple violent confrontations in downtown Washington, D.C.[1]  The next day, Evans redoubled his efforts to join the group.  In a follow-up email to a Proud Boys contact, Evans

---

[1] *See, e.g.*, NPR, *4 Stabbed, 33 Arrested After Trump Supporters, Counterprotesters Clash In D.C.* (Dec 13, 2020), https://www.npr.org/2020/12/12/945825924/trump-supporters-arrive-in-washington-once-again-for-a-million-maga-march (last visited September 27, 2024).

boasted that the had been "with [the] Chicago and Philly chapter mostly last night [December 12, 2020] as well as others in the thick of this all night until 2:30 am." Evans also bragged: "I got me some! Chicago PB [Proud Boy] Paul and another PB were in the thick of it with me twice. … I drove from Texas to help, I am now driving to Georgia to get with the PB Chapter there and support." A few days later, despite having been told that the Proud Boys were not accepting new members at the time, Evans told the same representative, "I will be back in DC 4th-7th or 8th. … I understand your position on new members[.] … I look forward to meeting you guys." By then, Evans had also offered another member of the Proud Boys – this one located in the Atlanta area – to "outfit one of your righteous men who need gear." Evans also reiterated that, days earlier, he "was in the streets of DC with Philly, Chicago and El Paso members getting some."

On the morning of January 6, 2021, Evans attended the "Stop the Steal" rally, at which the former President spoke. As the rally was concluding, Evans headed toward his hotel in Freedom Plaza and then toward the U.S. Capitol building with other protestors. He was wearing a bright yellow knit cap, olive green jacket, blue jeans, and a camouflage backpack. He also carried a blue megaphone.

At approximately 3:00 p.m., Evans entered the Senate Wing of the Capitol Building by stepping through a broken window next to the breached Senate Wing Doors. The glass panes of the window had been smashed open by other rioters, and broken glass and other debris was visible on the inside sill of the window. Inside and immediately to the left of the broken window through which Evans entered, a line of Capitol Police officers blocked off one direction of the corridor. The police officers were wearing full uniforms. Many were wearing riot helmets. A high-pitched, continuous alarm could be heard.



Once inside, Evans turned back to face the rioters outside (through a broken window), raised his megaphone to his mouth, and declared, "Bring 'em in."



Evans then marched toward the Crypt of the Capitol. Along the way, he used his megaphone to address other rioters, stating, "We want justice," as well as "Back the blue." Evans also led other rioters in the Pledge of Allegiance and the Star Spangled Banner. At approximately

3:11p.m., Evans used his megaphone to address other rioters inside the Crypt. In a video he recorded on his cell phone, Evans can be heard declaring: "Remember: do not break, do not damage, do not harm. We are in a peaceful protest. We are executing our constitutional duty when we have been cheated from a stolen election." Moments later, a Capitol Police officer asked Evans: "What time do you think we can get some people out [inaudible]?" Evans, who minutes earlier had incited others to break into the Capitol Building, responded, "There is more coming." Then, after telling the officer "we're not here to hurt you," Evans continued: "You see what's happened, this has finally happened."

Evans then walked back toward the Senate Wing Doors, but did not head for the exit. He took a detour to enter a Congressional conference room, which other rioters told him belonged to Speaker Pelosi. While in that room, Evans again used his megaphone to address other rioters. He then climbed on the inside sill of a window, looked out to the mob assembled outside, and gestured triumphantly in the mob's direction.



While in the room, Evans also recorded a video of himself. Looking into the camera, Evans asked, "Hey, how many of you have been in Nancy Pelosi's office before? I like it. I think I want to hang out." He then drank a gulp of Jack Daniels from another rioter's bottle. Moments later, he had another rioter record him as he took a celebratory shot of Fireball whiskey.



Evans exited the Capitol building after approximately 16 minutes, again through a broken window next to the Senate Wing Doors.

*Social Media Posts*

Since the attack on the Capitol, Evans has used GETTR, a social media platform, and X (formerly Twitter) to, among other things, spread false information about the January 6 attack; downplay his own culpability by attacking law enforcement; and fundraise from his participation in the January 6 attack. The government's sentencing memorandum (ECF No. 40) and subsequent filings (*e.g.*, ECF Nos. 51, 65) already reproduced several of these postings. In the last year, Evans

6

has continued to post inflammatory material on social media—some of it directed at judges of this district. A selection of Evans's statements on Twitter/X is illustrative:

- On October 15, 2023, Evans posted on his X account a photo of Judge Howell, with the following comment: "While it is hard to imagine being uglier on the inside than the outside, this schill is who SET THE TONE FOR #JANUARY6TH cases in D.C. BARYL HOWELL placed her political feelings on full display and PERSECUTED AMERICANS! SHAME ON THIS PARTISAN LOONEY! #J6 #JAN6 #WashingtonDC #swamp."

- On December 16, 2023, Evans replied to a post by another X user that referenced Judge Howell, "Beryl Howell is a corrupt traitorous [sic] partisan hack. Exactly the reason @EliseStefanik has called her out for her impropriety."

- On June 27, 2024, Evans posted on his X account, "Judge Walton is a corrupt piece of garbage."

In addition, Evans has repeatedly used his participation in the January 6 attack to promote traffic to his website (www.condemnedusa.com) and increase viewership of his January 6-related media interviews.[2]

*The Charges, Plea Agreement, and Sentence*

On February 24, 2021, Evans was charged by complaint with violating 18 U.S.C. §§ 1512(c)(2), 1752(a)(1), and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 4, he was arrested at his home in Texas. On March 17, 2021, the grand jury charged Evans with the five offenses identified in the complaint. On April 19, 2021, Evans voluntarily agreed to be interviewed, and was interviewed, by the FBI. On March 10, 2022, Evans pleaded guilty to Count Two of the Indictment, which charged him with violating 18 U.S.C. § 1752(a)(1): Entering and

---

[2] *See, e.g.*, Real America's Voice, *Is the FBI Trying to Punish Jan 6th Protestors Outside the Courts?*, https://americasvoice.news/is-the-fbi-trying-to-punish-jan-6th-protestors-outside-the-courts/ (last visited September 27, 2024); Real America's Voice, *Jan 6th Protestor Recounts the Shock of Charges*, https://americasvoice.news/jan-6th-protestor-recounts-the-shock-of-charges/ (last visited September 27, 2024); Treniss J. Evans (@CondemnedUSA), X (Sept. 8, 2023), https://x.com/CondemnedUSA/status/1700267634200121786 (last visited September 27, 2024) (promoting http://condemnedusa.com).

Remaining in a Restricted Building or Grounds. Under the plea agreement, Evans also agreed to pay $500 in restitution to the Architect of the Capitol.

On November 21, 2022, this Court sentenced Evans to 36 months of probation with 20 days of intermittent confinement, a $5,000 fine, $500 in restitution, and a $25 special assessment. In crafting this sentence, the Court emphasized the need for a lengthy period of supervision. In fact, the Court imposed a shorter term of (intermittent) incarceration precisely because a longer prison term would have limited the Court's ability to impose a sufficiently long supervision period:

> As I've explained on multiple occasions, in January 6th cases involving misdemeanors, I do not believe that I have the authority, the statutory authority, to impose both a period of imprisonment and a period of probation. And as I've said in other cases, I think a longer period of supervision is appropriate in cases like this because deterrence is very important to the Court, and Mr. Evans has made clear that I won't see him again, and I hope and trust that he's correct.
>
> Still, I want to have supervision in a case involving the kind of conduct that's at issue here and, therefore, I will impose a sentence of probation of three years. I cannot impose a sentence of imprisonment of the same length -- I cannot impose a sentence of imprisonment with a term of supervised release of the same length. So if I want to impose three years of supervision, then I think I need to look at intermittent confinement, which is what I'm considering here. And I think the case law suggests that too long a period of intermittent confinement is not appropriate either.

ECF No. 84 at 155 (emphases added).

## LEGAL BACKGROUND

Pursuant to 18 U.S.C. § 3564(c), a district court has discretion to terminate a term of probation imposed in a misdemeanor case "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). In making this determination, the Court must consider the factors in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*; *see also United States v. Hartley*, 34 F.4th 919 (10th Cir. 2022) (holding that a district court must make individualized determinations based on the applicable statutory criteria

before responding to a request to modify a sentence); *cf. United States v. Ferrell,* 234 F. Supp. 3d 61, 63 (D.D.C. 2017) (same holding for considering early termination of probation in felony case).

In his motion, Evans cites a "[m]onograph" from the Guide to Judiciary Policy for the notion that, in some cases, after a supervisee has been substantially compliant for 18 months and if he satisfies certain conditions, "there is a presumption in favor of recommending early termination." (ECF No. 88 at 7 (citing Guide to Judiciary Policy, Vol. 8E, Ch. 3 § 380.10(b), "Early Termination" (Monograph 109) (rev'd 2010))). Evans' reliance is misplaced. Contrary to the motion's suggestion, "[t]hese provisions do not impose a presumption on district courts in favor of early termination. Rather, they provide probation officers with a framework for when it is appropriate to <u>recommend</u> early termination of supervised release to district courts." *United States v. Fattah*, No. 21-3177, 2022 WL 2437846, at *3 (3d Cir. July 5, 2022) (unpublished). To our knowledge, no judge of this district has recognized such a presumption.[3] And for good reason: under Section 3564(c), "district courts are statutorily bound to consider certain factors and to then determine whether 'early termination is warranted by the defendant's conduct and is in the interest of justice.'" *Id.*

## DISCUSSION

**I. Evans Has Not Demonstrated Any New Or Extraordinary Circumstances That Warrant Early Termination Of Probation**

Evans argues that his probation should be terminated early because he has completed his intermittent-confinement condition, paid his fine, restitution, and assessment, is in compliance with his probationary conditions, and has assertedly shown personal growth and a commitment to

---

[3] In the one case in which a judge of this district has considered this source, *United States v. Etheridge*, 999 F. Supp. 2d 192 (D.D.C. 2013), the judge (Judge Hogan) did so in the context of terminating supervised release (not probation) and did not mention, much less rely on, any presumption in favor of early termination.

achieving a positive life. *See* ECF 88 at 9-10. However, as this Court and many others have recognized, mere compliance with the conditions of probation does not warrant early termination. *See, e.g.*, *United States v. Suarez*, No. 1:21-cr-205-DLF, Minute Order (Nov. 9, 2023) (denying early termination of probation). Although "extraordinary circumstances . . . are not necessary for such termination," they "may be sufficient to justify early termination of a term of supervised release." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020). District courts are entrusted with the discretion on whether to terminate probation or supervised release early consistent with these rules. *See, e.g.*, *Folks v. United States*, 733 F. Supp. 2d 649, 652 (M.D.N.C. 2010) (rejecting motion for early termination of supervised release because there was nothing unusual about the defendant's case) (citing *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y.2005)); *accord United States v. Parker*, 219 F. Supp. 3d 183, 190 (D.D.C. 2016) (holding, in the context of supervised release, that "good behavior alone is insufficient to warrant early termination of . . . supervision") (cited in *Suarez*, No. 1:21-cr-205-DLF (Nov. 9, 2023)); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (noting that "[w]hile [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"); *United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required to all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination"); *United States v. Hardesty*, Case No. 95-20031-01-JWL, 2002 WL 731705 (D.

Kan. Apr. 2, 2002) (rejecting arguments that defendant is "fully rehabilitated" and complied in all respects with post-release requirements and that continued release would serve "no meaningful and useful purpose").

Here, Evans is doing, at best, what is expected of him. There is nothing extraordinary about his conduct. It is what is expected of all defendants who are on probation. In fact, if anything, several factors weigh heavily *against* early termination. *First*, early termination would contravene the Court's primary concern in crafting Evans' sentence. As noted, at sentencing, this Court specifically emphasized the need for a lengthy term of supervision. ECF No. 84 at 155. And that consideration played an important role in the sentence that this Court ultimately crafted. The Court explained that it selected a shorter period of intermittent incarceration (20 days) as a condition of probation precisely because that option permitted the Court to *also* impose a multi-year probation term. *Id.* Evans' request for early termination, if granted, would turn the Court's logic on its head. *Accord Suarez*, No. 1:21-cr-205-DLF (Nov. 9, 2023) ("[T]he defendant's offense – participation in the January 6 riot – was exceptionally serious; in view of the nature of the defendant's offense, early termination would not promote respect for the law, provide just punishment, or afford adequate general deterrence.").

*Second*, while the government is not aware of any violations, Evans' conduct while on probation should continue to give the Court pause. As noted, Evans has continued to engage in inflammatory rhetoric on social media, some of it directed at judges of this district. Although Evans is not prohibited from posting such materials if he chooses, this Court may—and should—take that choice into account in deciding whether it would serve the interest of justice to accord Evans the extraordinary privilege of early termination. Evans' post-conviction conduct, in other

11

words, illustrates a real need for continued supervision and undermines his motion for early termination based on superficial compliance.

Finally, although Evans' stable personal life is commendable, that stability did not prevent him from carrying through on his desire to enter the United States Capitol during the Electoral College certification on January 6, 2021. The full term of probation is necessary to ensure that Evans continues to refrain from engaging in criminal activity, especially on the eve of another volatile presidential election and in the face of growing risks of political violence.

## II. Early Termination Of Evans' Probation Would Not Serve The Interests Of Justice

Looking to the sentencing factors under 18 U.S.C. § 3553(a), early termination of probation here would not serve the interest of justice. As to the nature and circumstances of the offense, § 3553(a)(1), Evans participated in the January 6, 2021 assault on the United States Capitol, which delayed the certification of the Electoral College. By the time Evans crossed into the Capitol's restricted grounds on January 6, he had ample forewarning that the mob that descended on the Capitol would engage in violent, criminal conduct—including from his previous interactions with the Proud Boys in December 2020.

Despite his self-serving denials at sentencing, moreover, the scene Evans encountered as he entered the Capitol Building left no doubt that he was joining a violent riot, not a peaceful protest. Evans did not enter the Capitol building through a door. He came in through a shattered window that had been smashed in by other protestors. Broken glass and other debris were still visible on the inside sill of the window. Inside, Evans faced a line of U.S. Capitol Police officers blocking off one direction of the corridor, many of them wearing riot helmets. A high-pitch, continuous alarm could be heard, similar to a fire alarm.

Despite the mayhem, seconds after entering the Capitol Building window, Evans turned towards the rioters gathered outside and said through his megaphone: "Bring 'em in." He then moved deeper into the Capitol Building and ultimately detoured into a Congressional conference room, where he climbed onto a window's sill, looked at the mob outside, and gestured triumphantly toward the mob. He also boasted that he was "hang[ing] out" in (what he believed to be) Speaker Pelosi's office. And he took a victory shot of Fireball whiskey.

These facts show that Evans went into the Capitol with full appreciation that he was joining the forcible takeover of a government institution.

As to other sentencing factors—the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); and the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B)—this Court carefully considered these factors in imposing 36 months of probation. Evans' request for a reduction in that period would undercut the Court's balancing of the § 3553(a) factors after hearing from the government, defense counsel, and Evans at the sentencing hearing.

Further undermining the interest of justice, granting Evans' motion for early termination may result in significant sentencing disparities between him and similarly situated January 6 defendants. 18 U.S.C. § 3553(a)(6); *see also United States v. Yung*, 1998 WL 422795, at *2 (D. Kan. June 12, 1998) (noting that if the court were to terminate the defendant's supervision early, "it would subvert the underlying policy of the Federal Sentencing Reform Act of 1984 to eliminate sentencing disparity among defendants guilty of similar offenses" and that the defendant's role in the conspiracy made him "more culpable than other convicted participants"). This Court has expressed that same concern in denying early termination of probation in at least one other January

6 case. *See Suarez*, No. 1:21-cr-205-DLF, Minute Order (Nov. 9, 2023) ("[G]iven the sentences the Court has imposed in similar cases, requiring the defendant to serve only 16 months of probation would create unwarranted sentencing disparities with respect to other, similar defendants.").

Since Evans' sentencing, hundreds of additional Capitol-breach defendants have been sentenced. To aid sentencing courts, the government has developed a table providing additional information about sentences imposed on other defendants that is available at https://www.justice.gov/usao-dc/media/1331746/dl?inline. As demonstrated by this table, terminating Evans' probationary sentence with over a third of his probation term still remaining would result in significant sentencing disparities with similarly situated defendants.

### III. Evans Has Not Proven That He Needs The Immediate Return Of His Passport

In the alternative, Evans requests the "immediate" return of his passport, asserting that "return of his passport is essential for Mr. Evans to fully resume his personal and professional activities." ECF No. 88 at 11. But Evans provides no factual support for that assertion—no travel plans, no travel dates, no itinerary. All he offers is a nebulous reference to unspecified "potential travel" "related to his educational and advocacy endeavors." *Id.* That is far too little. On this record, Evans has failed to show a genuine need for his passport's return.

\* \* \*

In sum, Evans presents no new information warranting early termination of probation. This Court carefully crafted a sentence of a significant period of probation—36 months—that included conditions to address the § 3553(a) factors. A reduction of the probation period would contravene both this Court's rationale for the sentence it imposed and the interest of justice, especially

14

considering the nature and circumstances of Evans' offense and the sentencing disparity that reduction would create relative to other January 6 defendants.

## CONCLUSION

For these reasons, the defendant's motion for early termination of probation should be denied.

September 27, 2024             Respectfully submitted,

                                        MATTHEW M. GRAVES
                                      UNITED STATES ATTORNEY
                                      D.C. Bar No. 481052

By:   */s/ Francesco Valentini*
       Francesco Valentini
       D.C. Bar No. 986769
       Deputy Chief, Capitol Siege Section
       United States Attorney's Office
       601 D Street NW
       Washington, D.C. 20530
       (202) 598-2337
       pfrancesco.valentini@usdoj.gov